**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RURAL WATER DISTRICT NO. 5 WAGONER COUNTY, OKLAHOMA,**  Plaintiff,  v.  **CITY OF COWETA; COWETA PUBLIC WORKS AUTHORITY,**  Defendants. | Case No. 08-CV-252-JED-FHM |

**OPINION AND ORDER**

The Court has for its consideration the Motion for Summary Judgment filed by defendants (Doc. 52). Plaintiff filed a response (Doc. 63), and defendants filed a reply brief (Doc. 74). Plaintiff also filed a Motion for Partial Summary Judgment (Doc. 48, 49), to which defendants responded (Doc. 62), and plaintiff filed a reply (Doc. 71). Upon consideration of the parties' filings and for the reasons set forth herein, the Court finds that the defendants' motion should be denied, and the plaintiff's motion should be granted in part and denied in part.

**I.   Background**

Plaintiff, Rural Water District No. 5 of Wagoner County, Oklahoma ("Wagoner-5"), filed this case claiming that, as a debtor association under 7 U.S.C. § 1926(b), it has the exclusive right to provide water service to all customers within its service area. Wagoner-5 alleges that it acquired a loan from the United States Department of Agriculture ("USDA") on June 15, 2007 and that Wagoner-5 therefore has the exclusive right to serve four customers whose service is at issue in this action: Koweta Indian Clinic; Timber Ridge Crossing Subdivision; Celebration at the Woods Subdivision; and Cedar Creek Village (the "disputed customers"). Defendant City of Coweta ("City") has provided water service to the disputed customers, and Wagoner-5 alleges

that the City's service to those customers violates § 1926(b). Wagoner-5 brings claims for damages and equitable relief under 42 U.S.C. § 1983 and 7 U.S.C. § 1926(b).

## II. General Standards Applicable to Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The evidence of a non-movant is to be taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). The plain language of Fed. R. Civ. P. 56 mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

The summary judgment procedure is "not . . . a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327. When the moving party has carried its burden under Rule 56, its "opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259.

Rule 56 also permits partial summary judgment. *See* Fed. R. Civ. P. 56(a) (party may move for summary judgment as to "part of [a] claim or defense"); Fed. R. Civ. P. 56(g) (the court "may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.").

### III.   Discussion

#### A.   *General Prohibition of Curtailment or Limitation of Service of an Indebted Rural Water Service Association*

In 1961, Congress amended legislation to allow nonprofit water associations to borrow federal funds to conserve, develop, use, and control water primarily serving rural residents. *Moongate Water Co. v. Doña Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1084 (10th Cir. 2005); *see* 7 U.S.C. § 1926(a)(1). Since 1994, the USDA has administered such loans. *Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1, Logan County, Oklahoma v. City of Guthrie ("Logan-1")*, 654 F.3d 1058, 1061 (10th Cir. 2011) (citations omitted). To provide greater security for the federal loans and to promote rural water development, the statute prohibits other water utilities from competing with the borrowing water association in its service area. *Id.* (citations omitted). The applicable statute provides:

>   (b) Curtailment or limitation of service prohibited
>
>   The service provided or made available through any such [indebted rural water] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

The Tenth Circuit "has applied § 1926(b) broadly to protect an indebted rural water district against competition from municipalities encroaching upon the rural water district . . . ." *Logan-1*, 654 F.3d at 1062. "Thus, [the court] ha[s] previously applied § 1926(b) in cases . . . where an indebted rural water district sought protection against encroachment by a neighboring municipality allegedly providing water service to the rural water district's customers or potential customers." *Id.* at 1062 (citing *Rural Water District No. 1, Ellsworth County v. City of Wilson*, 243 F.3d 1263, 1267-69 (10th Cir. 2001); *Sequoyah County Rural Water District No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1197-1201 (10th Cir. 1999)).

Most cases "'arising under § 1926(b) have involved a municipality's attempt to encroach on a rural water association's area of service. Courts have uniformly understood the section as forbidding such encroachment, concluding that § 1926(b) should be given a liberal interpretation that protects rural associations indebted to the [USDA] from municipal encroachment.'" *Logan-1*, 654 F.3d at 1062 (quoting *Adams County Reg'l Water Dist. v. Village of Manchester*, 226 F.3d 513, 518 (6th Cir. 2000)). To be entitled to protection against competition under § 1926(b), a rural water association "must establish 1) its continuing indebtedness on loans obtained from the USDA and 2) that it has provided or at least made water service available." *Logan-1*, 654 F.3d at 1062. "Any 'doubts about whether a water association is entitled to protection from

competition under § 1926(b) should be resolved in favor of the . . . indebted party seeking protection for its territory." *Id.* at 1062-63 (citations omitted).

### B.     *Defendants' Motion for Summary Judgment*

Defendants move for summary judgment on Wagoner-5's claims and argue that Wagoner-5 is not entitled to the protection of § 1926(b) for several reasons, discussed below.

#### 1.     *Boundaries of the Water District*

The City first argues that Wagoner-5's boundaries, by definition, exclude "the Town of Coweta," and, because the incorporating documents of Wagoner-5 did not specifically exclude Coweta *as it existed at the time of Wagoner-5's incorporation* (May 23, 1966), the City's subsequent annexation of lands (between 2002 and 2007) diminished Wagoner-5's boundaries. (Doc. 52 at 13). The City asserts that Wagoner-5 should have "described its boundaries to include all un-annexed land of the City of Coweta as of May 23, 1966." (*Id.* at 14). The City then argues that the district boundaries as described in the Order Incorporating Wagoner-5 must not have included land that would be annexed in the future. Thus, according to the City, its annexation (between 2002 and 2007) of the properties on which the City is providing water services to the disputed customers automatically removed those properties from Wagoner-5, and the City "has retained the right to serve any customers located within its city limits" as those city limits may change through annexation. (*Id.* at 12-14). The City does not cite any authority directly supporting its argument, although it notes that water districts in other cases defined their districts to exclude cities as they existed at the time of formation of the districts. (*Id.* at 14).

In response, Wagoner-5 notes that its boundaries were established under Oklahoma law on the date of the Order Incorporating Wagoner-5 (Doc. 49-5) and to allow a third party such as the City to diminish the district's area by annexation is inconsistent with any law or statutory

5

intent. The Court finds Wagoner-5's position more persuasive and, at a minimum, the Court cannot find that the City is entitled to judgment as a matter of law on its argument that subsequent annexations of land diminish the established boundaries of Wagoner-5.

In Oklahoma, the Rural Water, Sewer, Gas and Solid Waste Management Districts Act governs the creation of rural water districts. *See Okla. Stat.* tit. 82, § 1324.1 *et seq.* A district is formed pursuant to a process initiated by landowners who file a petition with a county clerk requesting the incorporation of a district and giving "a legal description of the lands owned by the petitioners and other lands which the petitioners propose to be incorporated into the proposed district." *Id.* § 1324.4. Notice of a hearing on the petition is then given to "all persons residing or owning property and incorporated municipalities within the proposed district." *Id.* § 1324.5. "At the time and place set for the hearing and consideration of the petition, it shall be the duty of the board of county commissioners to determine . . . [t]he area which should be included in the district." *Id.* § 1324.6. If the board of county commissioners determines that requirements are met, they shall "immediately declare the land described in the petition or any part thereof to be incorporated as a district . . . and thereupon the district shall be a body politic and corporate and an agency and legally constituted authority of the State of Oklahoma for the public purposes set forth in [the] act." *Id.* Every district so created "shall have perpetual existence, subject to dissolution [under the Act]." *Id.* § 1324.10(A). Lands may be released from a district upon petition of affected landowners specifically describing the lands they propose to be released from the district. *See id.* § 1324.21.

The provisions of the Oklahoma statutes indicate that the boundaries of a rural water district are determined at the time the board of county commissioners "declare[s] the land described in the petition or any part thereof to be incorporated as a district." *See Okla. Stat.* tit.

6

82, § 1324.6; *see also Rural Water Sewer and Solid Waste Mgmt, Distr. No. 1, Logan County, Oklahoma v. City of Guthrie*, 253 P.3d 38, 45-46 (Okla. 2010) (citations omitted) ("Creating a district in essence requires the County Commissioners to draw boundaries by defining the 'area which should be included in the district.' The County Commissioners must 'immediately declare the land described in the petition or any part thereof to be incorporated as a district' under the name of the purpose for which it is created. The existence of this language implies the Legislature's intent to convey a service area to the district. If not, the act of identifying the district's purpose, area to be served, and recording the legal descriptions with the county clerk and registrar of deeds would be futile.").

The Order Incorporating Wagoner-5 was entered on May 23, 1966. On its face it incorporates Wagoner-5 by defining the area and boundaries to be included in the district. (*See* Doc. 52-1).[1] This Court is unwilling to determine, as a matter of law, that the boundaries of Wagoner-5 may constantly and indefinitely be reduced by the actions of third parties such as the

---

[1] The Board of County Commissioners ordered that "the following described lands contained in the Petition filed herein be and the same are hereby incorporated and organized, said lands being described with more particularity as follows:"

> All of Sections 1 through 34 inclusive, in Township 17 North, Range 15 East lying North of the Arkansas River, except the Town of Coweta; and all of Sections 1 through 36, inclusive, Township 17 North, Range 16 East, lying North and East of the Arkansas River and West of the old channel of the Verdigris River, except the Town of Coweta, and all of Sections 18, 19, 20, 21, 28, 29, 30, 31, 32 and 33 and that part of Sections 7, 8, 9, 15, 16, 17, 22, 27 and 34 in Township 17 North, Range 17 East lying West and South of the old channel of the Verdigris River; and the S/2 of Sections 31, 32, 33, 34, 35 and 36, and the E/2 of Sections 12, 13, 24, 25 and 36 in Township 18 North, Range 15 East; and all of Sections 7 through 36, inclusive, except the NW/4 of Section 8 and N/2 SE/4 of Section 10, Township 18 North, Range 16 East lying West of the old channel of the Verdigris River; and all that part of Sections 7, 8, 17, 18, 19 and 30 lying West of the old channel of the Verdigris River in Township 18 North, Range 17 East, all in Wagoner County, State of Oklahoma.

(Doc. 52-1; *see also* 49-2, 49-3, 49-4, 49-5).

7

City here, approximately 40 years after Wagoner-5 was incorporated. Otherwise, the purpose of the creation of rural water districts (or other districts authorized by the Act) would be thwarted, as cities' annexation of properties within the boundaries of the districts could eventually reduce the districts to having little to no property within their boundaries. In addition, the City's argument that the boundaries of Wagoner-5 are diminished by each annexation is also inconsistent with the law construing § 1926(b) to prohibit municipalities from using their annexation of territory within a rural water district as a springboard for providing water service to residents within the district or to limit the water district's services to the annexed area. *See, e.g., Glenpool Util. Serv. Authority v. Creek County Rural Water District No. 2*, 861 F.2d 1211, 1214 (10th Cir. 1988) ("The statute prohibits Glenpool from using annexation of Eden South to curtail or limit the service made available by District No. 2. Glenpool may not legally use 'inclusion' of Eden South 'within the boundaries of any municipal corporation' as a springboard for providing water service to the area, and thereby limit the service made available by District No. 2"); *Rural Water District No. 4, Douglas County, Kansas v. City of Eudora, Kansas ("Eudora")*, 659 F.3d 969, 980 (10th Cir. 2011) ("A city may annex land within a water district's boundaries so long as it does not use the annexation as a means to provide water service or limit the water district's services to the annexed area.").[2]

### 2. Legal Right to Provide Service to the Disputed Customers

The City argues that, by virtue of permits it received from the Oklahoma Department of Environmental Quality ("ODEQ"), the City "is the appropriate water service provider" for three of the disputed customers, Timber Ridge Crossing Subdivision, Celebration at the Woods

---

[2] Because summary judgment is inappropriate on this issue and it is uncontroverted that the disputed customers' properties were included within Wagoner-5 territory by the Order Incorporating Wagoner-5, the Court need not address the subsidiary argument raised by the parties here – whether Wagoner-5 has the right to provide water service outside of its boundaries.

Subdivision, and Cedar Creek Village. (Doc. 52 at 16). In support of its argument, it notes that "it is undisputed in regard to the subdivisions that a permit currently has only been issued to the City, and none has been issued to [Wagoner-5]" such that "[p]ursuant to state law, [Wagoner-5] has no right to serve the disputed subdivisions." (*Id.* at 18). According to the City, it then follows that Wagoner-5 has no "vested rights" under 7 U.S.C. § 1926(b) and state law governs to prohibit Wagoner-5 from providing service to the three subdivisions. (*Id.* at 17-18). The City cites *Moongate Water Co., Inc. v. Doña Ana Mutual Domestic Water Consumers Ass'n*, 420 F.3d 1082 (10th Cir. 2005)[3] to support its argument that Wagoner-5 has no vested rights under § 1926(b) for the disputed subdivisions.

The Court finds that summary judgment is not appropriate on this issue, for several reasons. First, the ODEQ permits (and the ODEQ cover letters enclosing them) refer to permits for "construction" of water line, and each permit is plainly titled a "PERMIT TO CONSTRUCT." (Doc. 52-8, 52-11, and 52-14).[4] Even if the permits related to supply of water, there is no language in the permits that would confer upon the City any *exclusive* right to provide water service, nor is there any language stating that the City "is the appropriate water service provider" to those subdivisions. (*See id.*).

Second, Wagoner-5 submitted evidence that it had facilities in place to serve the disputed customers such that no off-site line extensions necessitating an ODEQ construction permit would be required. (Doc. 63 at 15-16; Doc. 63-1 at ¶ 9).

---

[3] Both the City and Wagoner-5 provided an incorrect cite for *Moongate Water*. The case is found at 420 F.3d 1082, rather than 403 F.3d 1082.

[4] Permits for two of the three subdivisions were not sought or approved until after Wagoner-5 became indebted under the USDA loan.

Third, while the City argued in its reply brief that *Okla. Stat.* tit. 27A, § 2-6-304 requires a permit to *supply* water even when construction of line extensions is required to provide water to a particular customer, in its opening brief, the City contradicted itself, saying that a permit was only required for *construction* and admitting that the City *has no permit* for one of the disputed customers here, the Koweta Clinic, which the City has been supplying with water since May 16, 2006. (Doc. 52 at 16) (stating that "because of the lines constructed to provide service, a permit was required for the subdivisions but not for the Koweta Clinic").

Fourth, the state statute provides for exceptions to the permitting process, and the City has not shown that Wagoner-5 could not receive an exception before supplying water to the disputed customers. *See Okla. Stat.* tit. 27A, § 2-6-304(B).

Fifth, the authority upon which the City's argument depends is inapplicable to the facts here. In *Moongate Water*, while the litigation was pending, the New Mexico Public Regulation Commission ("PRC") issued an order concluding that the rural water association "does not currently have the legal right to serve the Disputed Area," and prohibiting it from extending its facilities into the Disputed Area. 420 F.3d at 1087. As a result, the court concluded that the dispute over rights to future customers was moot because of the PRC's order. *See id.* at 1088-89 ("As a result of the PRC decision, there is no point in deciding whether [the rural water association] could acquire § 1926(b) protection in the Disputed Area in the future. Under state law, [the rural water association] is restricted from extending service to the Disputed Area, so it will have no occasion to invoke any right under the federal statute."). Unlike *Moongate Water*, there has been no similar state ruling or order that prohibits any future or current rights of Wagoner-5 within its district. Also, in *Moongate Water*, there was considerable evidence that the disputed area was just outside of the rural water association's territory. 420 F.3d at 1085. In

contrast, there is no dispute in this case that the disputed customers' properties were included in Wagoner-5's service area in the Order Incorporating Wagoner-5.

Finally, assuming an ODEQ permit were required to supply water to the disputed customers, it is noteworthy that the City itself does not have a permit with respect to the Koweta Clinic, and the City has not established that Wagoner-5 would be unable to obtain an ODEQ permit within a reasonable time. The City's permits for the three subdivisions were granted approximately one month after applications were made (*see* Doc. 52-7), and there is no evidence in the record suggesting that Wagoner-5 could not also promptly obtain any necessary permits within a reasonable time. In determining whether Wagoner-5 has "made services available" to the disputed customers as required to be protected by § 1926(b), the focus is "on whether the association has proximate and adequate 'pipes in the ground' with which it . . . can serve the disputed customers within a reasonable time." *Eudora*, 659 F.3d at 980 (citations omitted). To meet the "pipes in the ground" test, "the water district must demonstrate that 'it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service has been made.'" *Id.* While this does not reference any permitting, the test clearly contemplates potential line extensions to supply water service within a reasonable time, which would include all necessary steps to make such extensions, including obtaining any necessary permits for such extensions.

As noted, Wagoner-5 provided evidence that it has facilities in place to serve the disputed customers. In its reply brief, the City argues that Wagoner-5 will have to expend significant costs to provide service to the disputed customers. (Doc. 74 at 4-5 and 74-2). This argument and the supporting evidence were provided in the reply brief, rather than the opening brief supporting its summary judgment motion. Accordingly, those arguments were waived (for

11

purposes of summary judgment) by failing to include them in the opening brief. *See Cahill v. American Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) (citing *Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007)) (arguments first raised in a reply brief come too late); *Ulibarri v. City & County of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010) (argument first raised in reply brief may be disregarded); *Lobato v. New Mexico Environ. Dept.*, 838 F. Supp. 2d 1213, 1221, n.4 (D.N.M. 2011); *Moody v. Oklahoma Dept. of Corrections*, 879 F. Supp. 2d 1275, 1292, n.102 (N.D. Okla. 2012). To consider arguments raised for the first time in reply "would be 'manifestly unfair to [plaintiff] who, under our rules, has no opportunity for a written response'" and "it would also be unfair to the court itself, which, without the benefit of a response . . . to [a] late-blooming argument, would run the risk 'of an improvident or ill-advised opinion,' given our dependence as an Article III court on the adversarial process for sharpening the issues for decision." *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).

Even were the Court to consider the City's new argument and evidence absent Wagoner-5's input, the Court would find the City's evidence and argument to be insufficient to grant summary judgment on that basis. While the City argues that there will be significant costs, it does not provide evidence, argument, or legal authorities to establish that Wagoner-5's costs to provide services to the disputed customers are unreasonable, excessive and confiscatory. "Even where a rural water district meets the 'pipes in the ground' test, 'the cost of [its] services may be so excessive that it has not made those services 'available' under § 1926(b). . . . Thus, costs may not be unreasonable, excessive, and confiscatory." *Eudora*, 659 F.3d at 980-81 (citations omitted). It is the City's burden "to show that the water district's rates are unreasonable, excessive, and confiscatory." *Id.* at 981. Given that the City did nothing more than provide an

estimate of projected improvements and costs it claims would be necessarily expended by Wagoner-5, and it did not argue or provide authorities showing that such costs are "unreasonable, excessive, and confiscatory," summary judgment is inappropriate with respect to the estimated costs provided.[5]

### 3. The City's Service to Two of the Disputed Customers Prior to the Loan

It is undisputed that the City provided water service to two of the disputed customers, the Koweta Indian Clinic and the Timber Ridge Crossing Subdivision, *before* Wagoner-5 became indebted on the federal loan in June 2007. The City began providing water service to the Koweta Indian Clinic on May 16, 2006 and to residential customers within the Timber Ridge Crossing Subdivision on November 15, 2005. Thus, the City argues that summary judgment should be granted in its favor as to those two disputed customers.

The Tenth Circuit has held that a rural water district may maintain claims against a municipality for curtailment after the district becomes indebted, even where the municipality began providing service to disputed properties prior to the district's indebtedness. *See Sequoyah County Rural Water District No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1201-06 (10th Cir. 1999); *Pittsburg County Rural Water District No. 7 v. McAlester*, 358 F.3d 694, 712 (10th Cir. 2004). In *Sequoyah*, the court concluded that a rural water district may recover for encroachments "occurring or continuing" after the date on which the water district obtained a federal loan, so long as the water district can establish that it made service available to those customers. Because there were disputed fact issues regarding whether the rural water district's

---

[5] In *Eudora*, the court noted that the reasonableness of costs is based on the totality of the circumstances and identified a number of factors which may help guide a fact finder in its determination regarding costs. *See* 659 F.3d at 981. The City provided no analysis of the totality of the circumstances or any factors supporting any assertion that the projected costs would be unreasonable, excessive, and confiscatory.

facilities were such that it "made service available" to those customers, the Tenth Circuit reversed the district court's summary judgment order. 191 F.3d at 1196-1206.

In *Pittsburg County Rural Water District No. 7 v. City of McAlester*, 358 F.3d 694, 722 (10th Cir. 2004), the Tenth Circuit found that the district court erred in its application of § 1926(b). There, the district court dismissed claims that were based on sales to customers to whom the municipality began providing service prior to the water district's indebtedness. The district court held that "[w]hen a municipality is serving water to a property prior to a water district's [loan] date, the rural water district has no right to serve water to that property, and thus, no [§] 1926(b) protection." 358 F.3d at 712. On appeal, the Tenth Circuit reversed that holding because it conflicted with the holding of *Sequoyah*:

> The fact that a municipality had provided service to those properties prior to the FMHA loan was no bar in *Sequoyah* to claims arising out of a city's service during the period of indebtedness. . . . The district court's ruling conflicts with *Sequoyah* and was therefore error. Contrary to the district court's ruling, all § 1926 claims based on service by McAlester to customers within the limitations period were not otherwise barred by the fact that McAlester was serving those customers prior to the 1994 loan.

*Id.* at 712-13.

Here, the City recognizes that its argument for summary judgment based upon its provision of service to two of the disputed customers prior to Wagoner-5's federal indebtedness is "contrary to the 10th Circuit decisions in this area." (*See* Doc. 52 at 20). The City argues nonetheless that this Court should follow the reasoning of the Eighth Circuit, which expressly rejected the Tenth Circuit's rulings in *Pittsburg* and *Sequoyah*. *See Public Water Supply District No. 3 of Laclede County, Missouri v. City of Lebanon*, 605 F.3d 511, 518 (8th Cir. 2010) ("We recognize that the Tenth Circuit has addressed this question twice before and taken a contrary approach, albeit without much discussion of the issue.").

14

This Court must follow the precedent of the Tenth Circuit. *United States v. Spedalieri*, 910 F.2d 707, 709, n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits."). In any event, the Court disagrees with the Eighth Circuit's suggestion that the Tenth Circuit provided little discussion of the issues in *Sequoyah* and *Pittsburgh*. A plain reading of those decisions reveals a thorough analysis of the facts, applicable law, and policies underlying § 1926(b).[6] The reasoning of the Tenth Circuit on the issue is also consistent with the overarching standard applied in the Tenth Circuit to § 1926(b) claims: "Any 'doubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the . . . indebted party seeking protection for its territory.'" *Logan-1*, 654 F.3d at 1062-63 (citations omitted).

### 4. The City's Counterclaim for Trespass

The City filed a trespass counterclaim against Wagoner-5, alleging that Wagoner-5 "has constructed a water line across" city-owned property and that the construction of the waterline "constitutes a continuing trespass on the property of the City of Coweta, causing damage to the City." (Doc. 36 at 1). The City now seeks summary judgment on its counterclaim and asks the Court to determine that Wagoner-5 is liable on that claim. In its response brief, Wagoner-5 submitted evidence that creates genuine issues of material fact, precluding summary judgment on

---

[6] "Federal courts' broad construction of § 1926(b) reflects the two key goals underlying its enactment. The first was 'to provide greater security for the federal loans made under the program.' By 'protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system,' § 1926 protects the financial interests of the United States, which is a secured creditor of the water association, from reduction of the water association's revenue base. The second interest is the promotion of rural water development 'by expanding the number of potential users of such systems, thereby decreasing the per-user cost.'" *Pittsburg*, 358 F.3d at 715 (citations omitted).

the City's counterclaim. That evidence includes the following: (1) In the 1960s, the then-owner of the property subject to the trespass claim requested water service from Wagoner-5 as part of the development of a subdivision; (2) the water line, along with other utilities, were placed on the east side of Block 1, lots 1-5 of that subdivision, with the knowledge and approval of that owner in the 1960s; (3) the water line has been used to provide water service to lots 1-4 of Block 1 and to make water service available to lot 5, since completion in the 1960s; (4) the City purchased lot 5 in August 1986, almost twenty (20) years after the water line was installed; and (5) the City first raised the issue on October 29, 2010 after this litigation was underway.

Based on its responsive evidence, Wagoner-5 asserts numerous legal arguments in its response on the trespass claim, including arguments under the Oklahoma Governmental Tort Claims Act and trespass law. (Doc. 63 at 16-21). The City did not respond to those arguments or attempt to refute or distinguish the extensive authorities cited by Wagoner-5. Instead, the City merely argues in its reply that an affidavit of Arvil Morgan, the manager of Wagoner-5, is a "sham affidavit." (Doc. 74 at 9-10). The Court has reviewed the cited testimony of Mr. Morgan and his affidavit and disagrees with the City's characterization of the affidavit as "sham." The fact that Mr. Morgan testified at deposition that he never met the prior landowners does not preclude him from obtaining documents (which are attached to Wagoner-5's response) and educating himself about the prior owners and the history of the waterline constructed by Wagoner-5 which is the alleged trespass. In *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002), the Tenth Circuit noted that "'an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements . . . however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue.'" (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

16

"In deciding whether an affidavit is an attempt to create a sham issue of fact, the relevant factors are 'whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.'" *Lantec*, 306 F.3d at 1016 (quoting *Franks*); *see also Law Co., Inc. v. Mohawk Constr. & Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (determining district court erred in excluding affidavit from summary judgment consideration where there was no specific identification of conflicting testimony or how the affidavit was a sham). The City does not address the factors in its briefing, and it appears that the historical documentation provided within Wagoner-5's response was not made available to Mr. Morgan at his deposition. And as noted, the City does not attempt to challenge the evidence submitted with Wagoner-5's Response, and there is accordingly no indication or evidence that the information in Mr. Morgan's affidavit is an attempt to create a sham issue of fact.

### C.   *Wagoner-5's Motion for Partial Summary Judgment*

Wagoner-5 has moved for partial summary judgment on a number of issues relating to its claims and to potential defenses that may be asserted by the City.

#### 1.   *Entitlement to Protection under 7 U.S.C. § 1926(b)*

A rural water association is entitled to protection against competition under § 1926(b) if it: (1) is an association indebted to the federal government on a loan provided within the meaning of the statute; and (2) has provided or made available service to the disputed area. *See* 7 U.S.C. § 1926; *see also Sequoyah*, 191 F.3d at 1197 (citing *Glenpool*, 861 F.2d at 1214). The City does not dispute that the first element is satisfied here. In accordance with Fed. R. Civ. P. 56, the Court finds and concludes that there is no genuine dispute that Wagoner-5 is an "association" and that, since June 15, 2007, it has been indebted to the USDA on a loan made for the purpose

of constructing water facilities to meet the needs of residents within its service area. These facts are accordingly established in this case. *See* Fed. R. Civ. P. 56(g).

The parties have submitted conflicting evidence with respect to the second prong under § 1926(b), whether Wagoner-5 has provided or made available service to the disputed area. In analyzing this element, this Court "should focus primarily on whether the water association has *in fact* 'made service available,' i.e. on whether the association has proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." *Sequoyah*, 191 F.3d at 1203. A rural "water association meets the 'pipes-in-the-ground' test by demonstrating 'that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made.'" *Id.* (quoting *Bell Arthur Water Corp. v. Greenville Utilities Comm'n*, 173 F.3d 517, 526 (4th Cir. 1999)). "This is essentially an inquiry into whether a water association has the capacity to provide water service to a given customer." *Sequoyah*, 191 F.3d at 1203.

Wagoner-5 claims (and has submitted evidence) that it "could have immediately provided sufficient potable water through its facilities located within or adjacent to the properties [of the disputed customers]." (Doc. 49 at 10 of 26; *see* Doc. 49-9). On the other hand, the City has presented evidence in support of its contention that there are a number of factual reasons that Wagoner-5 is not able to serve the water needs of the disputed customers and that expensive improvements are necessary to provide service to the disputed customers. (Doc. 62 at 20-21 of 26; *see* Doc. 62-6, 62-7, 62-8, 62-15). Based upon the conflicting evidence, the Court finds that there are genuine issues of material fact as to whether Wagoner-5 "made service available" to the disputed customers, precluding summary judgment on that issue.

The City argues that Wagoner-5 cannot establish that it "made service available" to the disputed customers because it did not have the legal right to provide water service. To support that argument, the City argues, as it did in its summary judgment motion, that (1) the boundaries of Wagoner-5 are diminished each time the City annexes additional property and (2) the issuance of ODEQ permits to the City for some (but not all) of the disputed properties deprives Wagoner-5 of the right to provide service to the disputed customers. These issues are discussed above in connection with the Court's analysis of the defendants' summary judgment motion.

### 2. *Certain City Defenses*

Wagoner-5 moves for summary judgment on certain of the defendants' defenses. In response, the City admits that it is not maintaining any statute of limitations defense, that it does not rely on any defenses related to laches, estoppel or unclean hands, and that any separate defense of waiver is not necessary and can be withdrawn. (Doc. 62 at 24). Accordingly, the Court shall treat those defenses as though they are not at issue in this litigation. To the extent that Wagoner-5 moves for summary judgment on "all remaining affirmative defenses raised" by the defendants, Wagoner-5's arguments are lacking in specificity and are accordingly denied.

IT IS THEREFORE ORDERED that the defendants' Motion for Summary Judgment (Doc. 52) is **denied**.

IT IS FURTHER ORDERED that Wagoner-5's Motion for Partial Summary Judgment (Doc. 48) is **granted in part** and **denied in part** as set forth herein.

IT IS SO ORDERED this 11th day of June, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE