**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RURAL WATER DISTRICT NO. 5      )
WAGONER COUNTY, OKLAHOMA,    )
                              )
          Plaintiff,          )
                              )    Case No. 08-CV-252-JED-FHM
v.                              )
                              )
CITY OF COWETA; COWETA        )
PUBLIC WORKS AUTHORITY,      )
                              )
         Defendants.      )

## OPINION AND ORDER

The Court has for its consideration the following: (1) "Plaintiff's Motion in Limine to Exclude any Evidence or Argument that Wagoner-5 has an Obligation to Provide Fire Protection in Order to Obtain 7 U.S.C. § 1926(b) Protection" (Doc. 46); and (2) "Plaintiff's Motion in Limine to Exclude the Proposed Testimony of Michael D. Kyser" (Doc. 50).

**I.      Summary of Basic Issues in the Case**

Plaintiff, Rural Water District No. 5 of Wagoner County, Oklahoma ("Wagoner-5"), filed this case claiming that, as a debtor association under 7 U.S.C. § 1926(b), it has the exclusive right to provide water service to all customers within its service area. Wagoner-5 alleges that it acquired a loan from the United States Department of Agriculture ("USDA") on June 15, 2007 and that Wagoner-5 therefore has the exclusive right to serve four customers whose service is at issue in this action: Koweta Indian Clinic; Timber Ridge Crossing Subdivision; Celebration at the Woods Subdivision; and Cedar Creek Village (the "disputed customers"). Defendant City of Coweta ("City") has provided water service to the disputed customers, and Wagoner-5 alleges

that the City's service to those customers violates § 1926(b).  Wagoner-5 brings claims for damages and equitable relief under 42 U.S.C. § 1983 and 7 U.S.C. § 1926(b). [1]

To be entitled to protection against competition under § 1926(b), a rural water association "must establish 1) its continuing indebtedness on loans obtained from the USDA and 2) that it has provided or at least made water service available." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan County v. City of Guthrie*, 654 F.3d 1058, 1062 (10th Cir. 2011) (*"Logan-1"*).  "Any 'doubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the . . . indebted party seeking protection for its territory.'" *Id.* at 1062-63 (citations omitted).  "If the water district is entitled to protection, it must then prove that its services were curtailed or limited by the competing entity." *Rural Water Dist. No. 4, Douglas County, Kansas v. City of Eudora, Kansas*, 659 F.3d 969, 976 (10th Cir. 2011) ("*Eudora*").  The Court previously granted summary judgment to Wagoner-5 on the first element quoted above.  As such, it is established for purposes of this case that: "since June 15, 2007, [Wagoner-5] has been indebted to the USDA on a loan made for the purpose of constructing water facilities to meet the needs of residents within its service area."  (Doc. 90 at 17-18).

The Court determined that the second element – whether Wagoner-5 "made service available" to the disputed customers – remains a disputed fact issue for the jury in this case.  (*See*

---

[1] (b) Curtailment or limitation of service prohibited

The service provided or made available through any such [indebted rural water] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

*id.* at 18).  In analyzing this element, the focus is "primarily on whether the water association has *in fact* 'made service available,' i.e. on whether the association has proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow, Oklahoma*, 191 F.3d 1192, 1203 (10th Cir. 1999).  A rural "water association meets the 'pipes-in-the-ground' test by demonstrating 'that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made.'" *Id.* (quoting *Bell Arthur Water Corp. v. Greenville Utilities Comm'n*, 173 F.3d 517, 526 (4th Cir. 1999)).  "This is essentially an inquiry into whether a water association has the capacity to provide water service to a given customer." *Sequoyah*, 191 F.3d at 1203.

"Even where a rural water district meets the 'pipes in the ground' test, 'the cost of [its] services may be so excessive that it has not made those services 'available' under § 1926(b). . . . Thus, costs may not be unreasonable, excessive, and confiscatory." *Eudora*, 659 F.3d at 980-81 (citations omitted).  It is the City's burden "to show that the water district's rates are unreasonable, excessive, and confiscatory." *Id.* at 981.  The reasonableness of costs is based on the totality of the circumstances, including a number of factors which may help guide a fact finder in its determination regarding costs. *Id.*

## II.    Motion in Limine to Exclude Fire Protection Evidence

In both of its limine motions, Wagoner-5 argues that the Court should exclude any evidence or argument that Wagonter-5 has any obligation to provide fire protection.  The argument is based on established Tenth Circuit law which provides that 7 U.S.C. § 1926(b) was not enacted for the purposes of fire protection, but for the purpose of providing potable water. As a result, there is a line of cases establishing that, in determining whether Wagoner-5 has

3

"made service available" (i.e., whether it has met the "pipes in the ground" test), water needs for fire protection are not to be considered. *Logan-1*, 654 F.3d at 1066-67 (collecting cases). In *Logan-1*, the Circuit summarized that line of cases and noted that the law does not require a rural water district to provide fire protection to its customers in order to obtain the protection of § 1926(b). *Id.* Thus, a rural water district's "ability to provide fire protection is simply not relevant to the specific question of whether [the water district] has adequate pipes in the ground to 'make service available' for purposes of the § 1926(b) protection from competition." *Id.* at 1066.

The City concedes that Wagoner-5 is not required to provide water for fire protection in order to obtain protection under § 1926(b), but the City argues that "the cost of water for fire protection is relevant to the § 1926(b) analysis." (Doc. 60 at 2). In support of its argument, the City cites the *Eudora* case. In *Eudora*, the water district appealed the district court's jury instruction that the water district's cost of fire protection services may be considered when evaluating the reasonableness of its costs of services. *Id.* at 981-82. The Tenth Circuit affirmed the district court's decision to give the jury instruction in that case. *Id.* The court provided the following reasoning:

> It is well established that a water district's ability to provide water for fire protection is not a factor the court should analyze when determining whether the district has made service available. But **in cases where a water district's fees are at issue** and the fact-finder must—as we have previously held—analyze these costs under the totality of the circumstances, **an inspection of the nature and cost of all services offered by the water district might very well include an inquiry into costs associated with fire protection**.
>
> **Should a water district decide to provide fire-protection services, its pricing of such services could also bear on several of the factors outlined in *Rural Water District No. 1*.** A water district may charge excessive fees for fire protection where no competing provider exists, or it may charge higher fees for fire protection only to lowball its fees for residential water. Perhaps it charges a flat fee for all water service when only some of its customers receive fire

protection, thus providing more benefits to some customers over others. The cost of fire protection within the district's broader pricing scheme could allow the district to yield more than a fair profit, establish a rate that is disproportionate to the services rendered, or establish an arbitrary classification between various users. We therefore find no legal error in the district court's conclusion that fire-protection services may be considered solely to determine whether Douglas–4's prices for water service were unreasonable, excessive, and confiscatory.

Of course, at no time does a water district's decision to provide or forgo fire-protection services affect its ability to establish that it has sufficient "pipes in the ground" to make service available, and it is up to the party challenging the water district's § 1926(b) protection to prove that the water district's costs are unreasonable, excessive, and confiscatory. Moreover, costs must be examined individually for each property. Thus, **the relationship between fire-protection services and costs is highly context-specific**.

*Id.* at 982 (citations and internal brackets omitted).

The "factors" referenced in the above quote from *Eudora* are the four non-exclusive factors identified in *Rural Water Dist. No. 1, Ellsworth County, Kansas v. City of Wilson, Kansas*, 243 F.3d 1263, 1271 (10th Cir. 2001) ("*Ellsworth*"), for guiding the determination of the reasonableness of costs of providing water service. *See Eudora*, 659 F.3d at 981-82 (citing *Ellsworth* case). Those factors are: "(1) whether the challenged practice allows the district to yield more than a fair profit; (2) whether the practice establishes a rate that is disproportionate to the services rendered; (3) whether other, similarly situated districts do not follow the practice; [and] (4) whether the practice establishes an arbitrary classification between various users." *Eudora*, 659 F.3d at 981 (quoting *Ellsworth*, 243 F.3d at 1271).

Wagoner-5 asserts that the court's ruling in *Eudora* does not render the cost of water for fire protection relevant where Wagoner-5 does not and is not providing any fire protection services. (Doc. 70 at 1-4). Wagoner-5 also analyzes the *Ellsworth* factors in terms of fire-protection services and notes that, "because Wagoner-5 does not provide fire-protection service

and makes <u>no</u> charges for fire-protection services, the cost of fire protection service has no relevance in this case." (*Id.* at 3-4). Wagoner-5 applies the factors as follows:

> 1.  Wagoner-5 does not yield more than a fair profit for fire-protection services as it does not provide such service and makes no charges for such service.
>
> 2.  Wagoner-5 does not charge a rate for fire-protection services which is disproportionate to the fire-protection service rendered because it does not render fire-protection services and makes no charges for such services.
>
> 3.  Wagoner-5's practice of not providing fire-protection service is consistent with similarly-situated rural water districts because most Oklahoma rural water districts do not provide fire-protection services.
>
> 4.  Wagoner-5's practice of not providing fire-protection services does not create an arbitrary classification between users because Wagoner-5 does not provide fire-protection services to any customers.

(*See* Doc. 70 at 3-4).

At a hearing in this case, the parties provided arguments relating to the fire protection issue.  Counsel for the City acknowledged that the facts of this case are different than *Eudora*, but argued that fire protection is relevant to the § 1926(b) analysis.  The City's principal argument (both at the hearing and in its briefing) is that evidence regarding fire protection services will be relevant to Wagoner-5's request that the Court transfer the water line now owned by the City to Wagoner-5 for purposes of transitioning the disputed customers' water service from the City to Wagoner-5.[2]  Both parties have submitted that the transition of services issue is an equitable issue to be decided by the Court, and then only in the event that the jury finds in favor of Wagoner-5 on its 42 U.S.C. § 1983 claim that the City provided water service to those customers in violation of 7 U.S.C. § 1926(b).

---

[2]     For example, in its Response, the City states: "*Depending on the exact relief requested by [Wagoner-5]*, the City opposes the motion and requests direction from the Court." (Doc. 60 at 2).  Throughout the briefing, the City asserts that the "fire protection issue" is relevant to forfeiture.  (*See id*. at 6-9).

In essence, the City argues that it would be inequitable to transfer those City lines to Wagoner-5 because the City has a duty to provide fire protection to customers within the City limits and thus, even if Wagoner-5 prevails on its § 1926(b) claim, the City should be permitted to keep the water lines for purposes of providing fire protection services.  Wagoner-5 argues several points in response to the City's contention, including: (1) that the City did not expend the costs of infrastructure to connect to the homes within the disputed customers' subdivisions, as the cost of that was borne by developers and the lines were then transferred to the City at no cost to the City; (2) if the City had not violated § 1926(b) by encroaching on Wagoner-5's territory, the developers would have transferred the lines to Wagoner-5 at no cost; and (3) the City may connect its fire-protection equipment to the existing fire hydrants within the subdivisions, regardless of who owns the water lines.

To the extent that fire protection is relevant to the forfeiture issue, which the parties have agreed is an issue to be determined by the Court only in the event (and after) the jury finds in favor of Wagoner-5 on its § 1926(b) claim, the Court defers ruling on the admissibility of fire protection in that remedy phase (if such a phase becomes necessary due to a jury verdict in favor of Wagoner-5), until after the jury trial.

As to the admission of evidence regarding fire protection services in the jury trial, the City suggests that plaintiff's expert's opinion is premised upon an assumption that the lines within the subdivision will be conveyed to Wagoner-5, such that Wagoner-5 will have only to connect its nearest lines to the subdivision.  (*See* Doc. 60 at 7).  However, the City's analysis on that point makes it clear that the "fire protection issue" appears to be relevant principally to the determination of forfeiture, which is an issue to be determined (if ever) by the Court.  For example, the City ends its argument with the suggestion that "it would make sense for the City to

retain ownership of its existing lines so it could continue the current level of fire protection." (*Id.*).

The Court agrees with Wagoner-5 that, because it does not provide fire protection service and does not charge for any fire protection service, the factors and considerations relied upon by the court in *Eudora* are distinguishable.  Because it has not elected to provide fire protection service and does not charge for such service, the pricing and profit considerations that were of potential concern in *Eudora* are not presented here.  The *Eudora* analysis appears conditioned upon the water district actually providing and charging for fire protection service such that the costs for such service could be relevant to the costs of overall water service.  For example, in *Eudora*, the court noted that (1) analysis of the "costs of all services **offered by the water district** might very well include an inquiry into costs associated with fire protection"; (2) "**Should a water district decide to provide fire-protection services, its pricing of such services** could also bear on several of the [*Ellsworth*] factors"; (3) "A water district may charge excessive fees for fire protection . . . or it may charge higher fees for fire protection only to lowball its fees for residential water"; (4) "Perhaps it charges a flat fee for all water service when only some of its customers receive fire protection, thus providing more benefits to some customers over others";  (5) "**The cost of fire protection within the district's broader pricing scheme** could allow the district to yield more than a fair profit, establish a rate that is disproportionate to the services rendered, or establish an arbitrary classification between various users".  *Eudora*, 659 F.3d at 982 (emphasis added).  Each of these statements in *Eudora* reflects that the cost of fire protection service is relevant only when the water district provides and/or charges for such service, and they are inapplicable here because Wagoner-5 does not provide or charge for fire protection service.

To the extent that Wagoner-5's expert's calculations of costs to provide water service are premised upon an assumption that the subdivision's water lines will be transferred to Wagoner-5 to provide that water service, it would be appropriate and relevant for the City to cross-examine the expert regarding those underlying assumptions and the increase in costs to Wagoner-5 if it has to lay parallel lines within the subdivision.  But the City has not explained or provided any coherent argument as to why such cross-examination is dependent upon any mention of Wagoner-5's ability (or inability) to provide water protection services, much less any nexus between such evidence and the relevant issue of whether Wagoner-5's prices for water service are "unreasonable, excessive, and confiscatory."  In short, the City has not identified for the Court the specific types of evidence it intends to present as to fire protection and has not explained why any such evidence is relevant under *Eudora* given that Wagoner-5 does not provide, or charge rates for, fire protection service.

Accordingly, to the extent that fire protection services are relevant to equitable and forfeiture issues to be determined by the Court following a jury trial, the Court **defers** a ruling on the admissibility of such evidence in the equitable phase to that time.  In all other respects, the Court **grants** the Motion in Limine (Doc. 46) at this time, and evidence regarding Wagoner-5's ability to provide fire protection services or the cost of the City's provision of fire protection services is excluded.  Because it has not been made clear to the Court what the exact nature of any fire protection services evidence may be, or its relevance to the critical issue of whether the costs of water service are "unreasonable, excessive, and confiscatory," this ruling is without prejudice to reconsideration during the course of trial.

**III.    Plaintiff's Motion in Limine to Exclude Proposed Testimony of Michael Kyser**

   **A.    Opinions Regarding Fire Protection**

   For the same reasons set forth in Section II above, the Court finds that the opinions of Michael Kyser, the City's expert, regarding fire protection should be excluded.  Any opinions by Mr. Kyser that Wagoner-5 could not provide sufficient water for fire protection to the disputed customers and that the cost for Wagoner-5 to provide water for fire protection would be exorbitant are excluded at this time.  As noted above, a rural water district's "ability to provide fire protection is simply not relevant to the specific question of whether [the water district] has adequate pipes in the ground to 'make service available' for purposes of the § 1926(b) protection from competition." *Logan-1*, 654 F.3d at 1066.  In addition, the City has not provided an adequate explanation to support a proposition that such evidence is relevant under *Eudora* given that Wagoner-5 does not provide, or charge rates for, fire protection service.  Hence, the Court finds that Mr. Kyser's opinions relating to Wagoner-5's ability to provide fire protection services and the cost to Wagoner-5 to provide such fire protection services would unduly confuse and prejudice the jury, given that (1) Wagoner-5's ability (or inability) to provide adequate water for fire protection is not relevant to whether it has made service available to the disputed customers, and (2) it is undisputed that Wagoner-5 does not provide or charge for fire protection services.

   Thus, the Motion in Limine as to Mr. Kyser (Doc. 50) is **granted in part**, as to his proposed opinions regarding fire protection.  As with plaintiff's other limine motion, to the extent that fire protection service may be relevant to equitable and forfeiture issues to be determined by the Court following a jury trial, the Court **defers** a ruling on the admissibility of such evidence to that time.

### B.      Ability to Provide Potable Water

Wagoner-5 also requests that Mr. Kyser's opinions concerning Wagoner-5's ability to provide potable water should be excluded.  In support, Wagoner-5 argues that Mr. Kyser's opinions are based upon an assumption that all disputed customers will be served by Wagoner-5. Wagoner-5 argues that Mr. Kyser's opinion is premised upon an "all or nothing" approach and does not consider the ability to provide water to each of the disputed customers, it must be excluded because the determination of whether Wagoner-5 meets the pipes in the ground test is "essentially an inquiry into whether a water association has the capacity to provide water service to a given customer." *See Sequoyah*, 191 F.3d at 1203 (quoting *Bell Arthur Water Corp.*, 173 F.3d at 526 (4th Cir. 1999)).  In response, the City argues that Mr. Kyser's opinion is that Wagoner-5 does not have the ability to serve *any* of the disputed customers so that there need not be a customer-by-customer analysis.

The Court has reviewed the parties' submissions on the issue and concludes that Wagoner-5's challenge to Mr. Kyser's opinions regarding Wagoner-5's ability (or inability) to provide potable water to the disputed customers goes to the *weight* of the evidence rather than its admissibility.  Thus, the alleged problems with Mr. Kyser's opinion on that point are the proper subject of cross-examination, rather than exclusion.  The issue of whether Wagoner-5 has made service available to the disputed customers (any one or more of them) is the central issue in this case and Mr. Kyser's opinion is directly relevant to that issue, even though that opinion is disputed (and is the proper subject of cross-examination) by Wagoner-5.

Accordingly, the Motion in Limine (Doc. 50) is **denied in part** to the extent it seeks exclusion of Mr. Kyser's testimony on potable water.

IT IS SO ORDERED this 30th day of September, 2013.


JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE